**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**LISA JOHNSON,**

        **Plaintiff,**        **CIVIL ACTION NO. 12-CV-14637**

  vs.

                              **DISTRICT JUDGE STEPHEN J. MURPHY, III**

                              **MAGISTRATE JUDGE MONA K. MAJZOUB**

**TRI-STATE FINANCIAL
ENTERPRISES, LLC., and
MICHAEL NELMS**

        **Defendants.**
_____/

## REPORT AND RECOMMENDATION

On October 19, 2012, Plaintiff Lisa Johnson filed her Complaint against Tri-State Financial Solutions, LLC, alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1962, *et seq.* (Docket no. 1.) With leave of the Court, on April 12, 2013, Plaintiff filed her First Amended Complaint dismissing Tri-State Financial Solutions, LLC, as a Defendant and adding as Defendants Tri-State Financial Enterprises, LLC, and Michael Nelms, Tri-State Enterprises's "Owner, Officer, Director, Manager, or Agent." (Docket no. 11.) Defendants failed to plead or otherwise defend against Plaintiff's Amended Complaint, and on June 12, 2013, the Clerk entered a Default against Defendants. (Docket no. 16.)

Before the Court is Plaintiff's Motion for Default Judgment. (Docket no. 19.) Defendants have not responded. Plaintiff's Motion has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 21.) The undersigned has reviewed the Motion, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.     Recommendation**

For the reasons that follow, the undersigned recommends granting Plaintiff's Motion for Default Judgment [19]. The Court should award Plaintiff $3,000 in actual damages, $1,000 in statutory damages, and $4,525.50 in attorneys' fees and costs for a total award of $8,525.50.

**II.    Report**

    **A.     Facts and Procedural History**

Plaintiff alleges that on or about August 23, 2012, Defendant Tristate called Plaintiff in an attempt to collect a debt. (Docket no. 11 ¶22.) Plaintiff asserts that Defendant's representative left a voice mail indicating that "she was calling from 'the Law Office of TriState.'" (*Id.* ¶25.) Plaintiff further alleges that Defendant's representative stated that she "was calling Plaintiff in regards to a case with Plaintiff's name and Plaintiff's social security number" and left Plaintiff a "case number." (*Id.* ¶¶33-34.) Therefore, Plaintiff alleges that Defendants violated the FDCPA whey they:

    a.    Placed a telephone call to a consumer without meaningful disclosure of the caller's identity in violation of 15 U.S.C. §1692d(6);

    b.    Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

    c.    Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

    d.    Falsely represented either directly and/or by implication that he was an attorney and/or that the communication was from an attorney in violation of 15 U.S.C. §1692e(3);

    e.    Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

    f.    Failed to disclose in communications that said communication was from a debt collector and that any information obtained during the communication

    will be used for the purpose of collecting a debt in violation of 15 U.S.C. §1692e(11);

  g. Using any business, company or organization name other than the true name of the debt collector's business, company or organization in violation of 15 U.S.C. §1692e(14); and

  h. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

(*Id.* ¶¶43, 46.) Plaintiff, therefore, asks the Court for compensatory damages, statutory damages in the amount of $1,000.000, and Plaintiff's attorneys' fees and costs. (*Id.* ¶¶44, 47.)

  In her Motion for Default Judgment, and through her affidavit, Plaintiff asserts that she believed that she was being sued and that she had to hire an attorney. (Docket no. 19-1 at 3.) She also asserts that Defendant kept calling her, even after she hired an attorney. (*Id.*) Thus, Plaintiff asks the Court to award her actual damages in the amount of $3,000.00 for "mental anguish and emotional distress." (Docket no. 19 at 5; docket no. 19-1 at 3.) Plaintiff's attorneys calculate their fees and costs at a total of $4,525.50. (Docket no. 19 at 8.) Therefore, Plaintiff seeks a total award of $8,525.50.

  **B.** **Standard**

  Fed. R. Civ. P. 55(b)(2) provides that in entering a default judgment, the "court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2). Pursuant to Rule 54(c), "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

  **C.** **Analysis**

When a defendant is in default, he is bound on the issue of liability as to the factual allegations in the Complaint but "still has the opportunity to respond to the issue of damages." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 111 (6th Cir.1995). "Fed.R.Civ.P. 55 does not require a presentation of evidence as a prerequisite to the entry of a default judgment, although it empowers the court to conduct such hearings as it deems necessary and proper to enable it to enter judgment or carry it into effect." *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837 (E.D. Mich. 2006) (citing Wright, Miller & Kane, Federal Practice and Procedure, Civil 3rd § 2688).

As of the date of this Report, none of the Defendants has appeared in this matter with regard to the issue of liability or the issue of damages. Plaintiff has outlined three areas of damages; the undersigned will address each in turn.

**1. Actual Damages**

The FDCPA allows a person to collect "an amount equal to the sum of . . . any actual damage sustained by such a person" as a result of a defendant's violation of the Act. 15 U.S.C. §1692k(1). As noted, Plaintiff seeks $3,000 in actual damages. (Docket no. 19 at 5.) In support of her request, Plaintiff states, in part, as follows:

> As a result of Tristate's conduct, I suffered mental anguish and emotional distress. Worrying about Tristate and what it may do kept me up at night worrying as I did not know what actions could and would be taken against me. I became jumpy and afraid to answer my phone for fear that it was Tristate. I thought the representative leaving the message was an attorney. The representative then stated I should contact Tristate as soon as possible about my matter and left a telephone number for me to contact. I was stressed and afraid to call back, as I did not know why I would have a lawsuit filed against me, or why one would be filed against me in the near future. I did not have money for an attorney but felt that I had no options but to try and retain an attorney. I was afraid of what Tristate may do. I thought Tristate could do something to ruin my credit report since they had my social security number, or they may contact HR to garnish wages. The thought they (sic) Tristate could damage my credit was a terrible thought I did not know what to do and I could not afford to have my wages garnished. If my wages were garnished I may

> not be able to pay bills and could have more issues as a result. I was afraid Tristate may call my boss and get me in trouble or fired. I could not afford to be in bad graces at work or fired. I was worried if a lawsuit had not filed yet, when it was someone would come serve me at work or come to my home or bother me and/or my family. This would be humiliating to be served in front of people at work or my family. I was really unsure as to what they may do. It kept me awake at night worrying as to what actions Tristate may take against me. Tristate kept calling me and leaving messages, even after I retained a lawyer they were still calling me. This made me feel even more powerless that I retained an attorney and that did not stop Tristate from calling me. I felt that I had no more actions to take to get Tristate to stop calling and harassing me.

(Docket no. 19-1 at 3.) Plaintiff also draws the Court's attention to 13 cases wherein the respective plaintiffs were awarded as much (or more) than Plaintiff has requested in this matter for similar violations of the FDCPA. (Docket no. 19 at 5.) The undersigned finds no reason to question Plaintiff's credibility and no reason to deny her request. The Court should award her $3,000 in actual damages.

### 2. Statutory Damages

In addition to actual damages, the FDCPA allows an individual to recover statutory damages in an amount "not exceeding $1,000." 15 U.S.C. §1692k(2). The undersigned finds that Defendants' repeated violations of the FDCPA in this matter, including multiple calls to Plaintiff even after she retained counsel, coupled with Defendants' failure to appear in this matter, make such an award appropriate. The undersigned, therefore, recommends awarding Plaintiff $1,000 in statutory damages.

### 3. Attorneys's Fees and Costs

A debt collector who fails to comply with the FDCPA is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). To calculate a reasonable attorney's fees award, courts use the "lodestar method," which requires the

court to multiply a reasonable hourly rate by the reasonable number of hours worked. *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010). The Court "has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Hett*, 2011 WL 740460, at *2 (quoting *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). But "[a]ccording to the law of this circuit, [the court] is required to adjust attorney fee rates to the local market rates for attorneys." *Swans v. City of Lansing*, 65 F.Supp.2d 625, 647 (W.D.Mich. 1998) (citing *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995)). In addition, the court considers the following factors when calculating the reasonableness of attorney fees: (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. *Miller v. Alldata Corp.*, 14 Fed. Appx. 457, 468 (6th Cir. 2001).

>The Supreme Court has also provided guidance:
>
>The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation is inadequate, the district court may reduce the award accordingly.
>
>The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S.Rep. No. 94-1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission[.]

*Hensley v. Eckerhard*, 461 U.S. 424 (1983).

Plaintiff's attorneys assert that their firm spent a total of 19.1 hours on this matter, broken down as follows: (1) Attorney Larry Smith - 2.9 hours; (2) Attorney David Marco - 1.8 hours; (3)

Attorney Ashley Decker - 3.7 hours; and (4) a paralegal - 10.7 hours. (Docket no. 19 at 8.) A review of the attorneys' billing statements shows that the paralegal completed a majority of the work in this matter with the three attorneys reviewing, modifying, and approving work as necessary. Coupled with Defendants' failure to object, the undersigned finds that the number of hours that Plaintiff's attorneys claim to have spent on this matter is entirely reasonable.

Likewise, the undersigned finds that the rates requested by Plaintiff's attorneys are reasonable. Attorney Smith requests an hourly rate of $395.00; Attorney Marco requests an hourly rate of $340.00; Attorney Decker requests a rate of $225.00; and the attorneys request an hourly rate of $115.00 for their paralegal. (Docket no. 19 at 8.) In support of these fees, Plaintiff's attorneys draw the Court's attention to various matters around the United States in which Plaintiff's attorneys have been awarded their requested fees.[1] Moreover, Plaintiff's attorneys note that the Laffey Matrix[2] suggests a recognized rate higher than what each attorney is requesting in this matter. (*See id.* at 6-7.) The undersigned finds no reason to deny Plaintiff's attorneys the hourly rates that they have requested in this matter.

Finally, Plaintiff's attorneys state that their costs include $350.00 for filing Plaintiff's Complaint, $330.00 for service of the Summons, and a $25.00 subpoena fee. (*Id.* at 8.) These fees are reasonable and necessary in light of Plaintiff's Complaint. Therefore, the undersigned

---

[1] Plaintiffs' attorneys note that their hourly rates have been adjusted since their awards in these matters due to inflation, additional experience, and increased costs. (Docket no. 19 at 7 n.1.)

[2] The Laffey Matrix is "an official statement of market-supported reasonable attorney fee rates that was adopted, and is periodically updated, by the United States Court of Appeals for the District of Columbia." (Docket no. 19 at 6 (citing *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 347 (6th Cir. 2000), (citing *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984))).)

recommends awarding Plaintiff $3,820.50 in attorneys' fees and $705 in costs, for total fees and costs in the amount of $4,525.50.

### D. Conclusion

For the reasons set forth herein the Court should grant Plaintiff's Motion for Default Judgment [19]. The Court should award Plaintiff $3,000 in actual damages, $1,000 in statutory damages, and $4,525.50 in attorneys' fees and costs for a total award of $8,525.50.

### NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address

each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 11, 2014    s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon the parties and/or counsel of record on this date.

Dated: March 11, 2014    s/ Lisa C. Bartlett
Case Manager